UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CATSKILL ASSOCIATES, L.L.C.

                                Plaintiff,

     -v-                                        1:08-CV-598 (LEK/ RFT)

RITA K. BENZA, Individually and as
Executrix of the Estate of Augustine J.
Benza,

                                Defendant.

**MEMORANDUM-DECISION AND ORDER**

       Plaintiff filed the instant Complaint on June 6, 2008, seeking damages stemming from Defendant's alleged breach of an executory real estate contract. Compl. (Dkt. No. 1). Defendant filed her Answer on August 22, 2008, asserting counterclaims for breach of contract, tortious interference with a prospective contractual relationship, and punitive damages. Answer (Dkt. No. 8). Presently before the Court is Plaintiff's Motion to Dismiss in part Defendant's Counterclaims. Mot. (Dkt. No. 11). For the reasons discussed below, the Motion is granted. However, the Court will grant Defendant leave to replead her counterclaim for tortious interference.

**I.    BACKGROUND**

       On February 15, 2008, Plaintiff and Defendant entered into a real property sale agreement which provided that Defendant would sell and Plaintiff would purchase commercial property located at 1179 Vestal Avenue in Binghamton, New York. Compl. ¶ 8 and Ex. 1; Answer ¶ 7. After the execution of the agreement, Plaintiff commissioned a survey of the property. Compl. ¶ 12. The survey revealed an encroachment of approximately one and a half feet arising from a structure

located on the lands to the west of the property.  Id. ¶ 13 and Ex. 2.

On April 1, 2008, Plaintiff's counsel provided Defense counsel with notice of the encroachment.  Compl. ¶ 17 and Ex. 4.  On April 21, 2008, Defense counsel responded that this encroachment was *de minimus*, did not make title to the property unmarketable, and requested that the closing occur as soon as possible.  Compl. ¶ 18 and Ex. 5; Answer ¶ 9.  On May 7, 2008, Plaintiff's counsel reasserted her belief that the encroachment rendered the property unmarketable and demanded the return of Plaintiff's deposit.  Compl. ¶ 19 and Ex. 6; Answer ¶ 10.  Defense counsel responded on May 23, 2008, asserting again that the encroachment was *de minimus* and that his client was unwilling to return the deposit.  Compl. ¶ 20 and Ex. 7; Answer ¶¶ 11, 13.  Defense counsel also offered that Defendant would negotiate a revocable license with the adjacent property owner to resolve any concerns Plaintiff had about the encroachment.  Compl. ¶ 20 and Ex. 7; Answer ¶ 13.

In support of her Counterclaim for tortious interference with a prospective contractual relationship, Defendant alleges that during the period from November 2007 through February 2008, she had specific negotiations with Family Dollar, Inc. ("Family Dollar") as a prospective tenant of the subject building and property located at 1179 Vestal Avenue.  Answer ¶ 17.  Plaintiff is affiliated with a company that owns property immediately adjacent to the east of the property at issue in this case, and that affiliated company operates a small shopping center on that adjacent property.  Compl. ¶ 7; Answer ¶ 18.  Defendant alleges that Family Dollar has been a tenant in that shopping center for many years and that the lease agreement between Family Dollar and Plaintiff's affiliated company was about to expire in June 2008.  Answer ¶ 19.  Defendant further alleges that Family Dollar had begun negotiations with Defendant to lease the property located at 1179 Vestal

Avenue, and that in response, "with the specific intent to terminate the defendant's agreement with Family Dollar Inc., [Plaintiff] fraudulently entered into the subject real estate purchase agreement with the defendant[.]" Answer ¶¶ 20-24. Defendant alleges that "plaintiff's actions in misrepresenting their intentions to purchase said property from the defendant were fraudulent and were specifically pursued in order to keep Family Dollar Inc. as a tenant at the shopping center owned by the plaintiff's affiliated company." Id. ¶ 26.

## II.   STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party in its pleading as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007). A party seeking dismissal of a pleading under Rule 12(b)(6) bears a heavy burden, as the question presented by such a motion is not whether the claimant is ultimately likely to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d. Cir. 1995) (internal quotation and citations omitted)). Accordingly, counterclaims should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the defendant has failed to provide some basis for the allegations that support the elements of her claim. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-563, 570 (2007); see also Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) ( "In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face'") (quoting Twombly, 550 U.S. at 570). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the non-moving

3

party's] claims across the line from conceivable to plausible.'" In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570).

When considering a motion to dismiss a pleading for failure to state a claim, a court "may consider all papers and exhibits appended to the [pleading], as well as any matters of which judicial notice may be taken." Hirsch v. Arthur Andersen and Co., 72 F.3d 1085, 1092 (2d Cir. 1995); see Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss[.]" Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Industries, 949 F.2d at 47); see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasizing that "a plaintiff's *reliance* on the terms and effect of a[n external] document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). If a court considers materials other than those listed above, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 154-56 (2d Cir. 2006).

In opposition to Plaintiff's Motion to dismiss the counterclaims, Defendant has submitted an affidavit by Domenic A. Mazza ("Mazza"), a licensed commercial real estate broker, along with two exhibits. Dkt. No. 15 and attached exhibits. In her Memorandum of law in opposition to Plaintiff's Motion, Defendant states that the allegations of her counterclaim for tortious interference

with prospective contractual business relations "are factually substantiated by the affidavit of Domenic Mazza, the commercial realtor who was very much involved in this transaction." Def.'s Mem. in Opp'n at 5 (Dkt. No. 15). Defendant refers to the affidavit numerous other times throughout her Memorandum. See id.

The Mazza affidavit was not included with Defendant's Answer, and is not incorporated by reference or otherwise relied upon by Defendants in their Answer. Moreover, conversion of the pending Motion to a motion for summary judgment would not be appropriate at this stage of the litigation, as the parties are still conducting discovery on Plaintiff's claims. Accordingly, the Court will not consider the Mazza affidavit or the accompanying exhibits in its determination of Plaintiff's Motion to dismiss Defendant's counterclaims.

### III. DISCUSSION

#### A. Punitive Damages

Under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights[.]" Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 613 (1994). A party seeking punitive damages where the claim arises from a breach of contract must demonstrate that (1) defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the conduct was directed to the plaintiff; and (4) the conduct is part of a pattern directed at the public generally. New York University v. Continental Ins. Co., 87 N.Y.2d 308, 315-16 (1995) (citing Rocanova, 83 N.Y.2d at 613).

In her Answer, Defendant has not alleged that Plaintiff's conduct was part of a general pattern directed at the public. Nor do Defendant's allegations regarding Plaintiff's alleged wrongful

5

conduct rise to the level of egregiousness necessary to sustain a punitive damages claim. See Rocanova, 83 N.Y.2d at 613 (punitive damages recoverable "where the breach of contract also involves a fraud evincing a high degree of moral turpitude and demonstrat[es] such wanton dishonesty as to imply a criminal indifference to civil obligations") (internal quotations and citations omitted). Defendant's Memorandum includes no argument to show why Plaintiff's actions should give rise to the drastic remedy of punitive damages. Accordingly, Defendant's counterclaim for punitive damages is dismissed with prejudice.

### B.  Counterclaim for Breach of Contract

Defendant contends that Plaintiff breached the contract by failing to fulfill its obligations to purchase the property pursuant to the terms of the contract. Answer ¶ 12. Defendant alleges that

> in reliance upon the plaintiff's representations in said contract, [Defendant] did not execute a lease agreement that had been orally agreed to, and has not pursued any other lease or sale opportunities since the execution of this contract. The defendant's building remains vacant and the defendant is receiving no rental income from said property. The defendant continues to incur expenses for this property including maintenance, insurance, and property tax.

Answer ¶ 14. Defendant seeks damages in the amount of $500,000. Id. ¶ 15.

The contract provided for a non-refundable deposit of $69,500 for the purchase of the property. Contract ¶ 4.A.(1) (Dkt. No. 1, Ex. 1). The contract further provided that "[a]s consideration for the non-refundable deposit, seller warrants to discontinue all current lease negotiations, as well as discontinue other sale opportunities." Id. ¶ 4.A.(3).

Plaintiff moves to dismiss this counterclaim to the extent Defendant seeks damages in excess in the amount of the $69,500 non-refundable deposit provided for in the contract. Plaintiff argues that Defendant cannot now claim entitlement to any damages for breach of contract beyond

6

that agreed to in the contract. In response, Defendant argues that the provision concerning the deposit did no limit Defendant's ability to seek damages for breach of contract. Defendant argues that the contractual provision should not be read as a liquidated damages provision and that the contract is ambiguous regarding whether Defendant's damages would be limited to retention of the deposit in the event of the buyer's breach.

Under New York law, interpretation of a contract is a matter of law for the court to decide. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (quoting K. Bell & Assocs. Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)). The court must determine whether the contract is unambiguous with respect to the issue disputed by the parties. Id. "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" American Home Assur. Co. v. Hapag Lloyd Container Linie, GMBH, 446 F.3d 313, 316 (2d Cir. 2006) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)). If no such ambiguity exists, courts must interpret the contract "so as to give effect to all of its provisions and 'cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a conflict where one need not exist.'" Net2Globe Int'l, Inc. v. Time Warner Telecom of New York, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) (quoting Pearce, Urstadt, Mayer & Greer Realty Corp. v. Atrium Dev. Assocs., 77 N.Y.2d 490, 497 (1991)). "However, if the contract is ambiguous and relevant extrinsic evidence as to its meaning is available, its interpretation is a question of fact for the factfinder." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 111 (2d

Cir. 2006) (citations omitted).

"A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 425 (1977) (citations omitted). "In interpreting a provision fixing damages, it is not material whether the parties themselves have chosen to call the provision one for 'liquidated damages[.]'" Id. "The rule is well-established that a valid contractual provision for liquidated damages controls the rights of the parties in the event of a breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained by the injured party." X.L.O. Concrete Corp. v. John T. Brady and Co., 104 A.D.2d 181, 184 (1st Dept. 1984).

The Court finds that the deposit provision of the contract (4.A.(1)), when read in conjunction with provision 4.A.(3), amounts to a liquidated damages clause for any losses sustained by Defendant due to forgone lease or sale opportunities. In the alternative, the Court finds no ambiguity in the provisions regarding the bargain struck by the parties: Defendant agreed to discontinue all current lease negotiations and other sale opportunities, as consideration for the non-refundable deposit. If Plaintiff is determined to have breached the contract, Defendant can retain the deposit, and thus would receive the benefit of the bargain she entered into with Plaintiff. However, Defendant cannot seek damages beyond what she bargained for in the contract. Therefore, Defendant's counterclaim is dismissed with prejudice to the extent that Defendant requests damages for breach of contract in excess of the amount of the $69,500 deposit.

    **C.**    **Counterclaim for Tortious Interference with a Prospective Contractual Relationship**

Defendant alleges that Plaintiff committed tortious interference with Defendant's prospective contractual relationship[1] with Family Dollar, and that as a result, Defendant has incurred damages in the amount of $500,000. Plaintiff moves to dismiss this counterclaim on various grounds.

"[T]o state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." Carvel Corp. v. Noonan, 3 N.Y.3d 182, 192 (2004) (citations omitted). Where the alleged wrongdoer interfered with prospective business relations (as opposed to interfering with an existing contractual relationship), the conduct must generally amount to a crime or independent tort to be actionable. Carvel Corp., 3 N.Y.3d at 190.

The Court agrees with Plaintiff that Defendant has failed to adequately plead the required elements to sustain a counterclaim for tortious interference with prospective business relations. Defendant has failed to adequately plead that Plaintiff's alleged tortious interference was directed at

---

[1] The Court notes that while Defendant has termed its counterclaim "tortious interference with the defendant's prospective contractual relationship[,]" Answer ¶ 28, most New York courts refer to this claim as tortious interference with prospective business relations or tortious interference with prospective economic advantage.

a third party. Defendant's Answer contains numerous allegations that Plaintiff acted fraudulently in their dealings with Defendant. Yet while Defendant alleges that Plaintiff negotiated with Family Dollar to enter into a new lease agreement, she fails to allege acts by Plaintiff directed at Family Dollar that would constitute malicious or unfair conduct amounting to a crime or independent tort. Defendant's conclusory allegations that Plaintiff acted fraudulently are also insufficient to support her claim. See, e.g., Berman v. Sugo LLC, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008). Defendant also fails to allege that but for Plaintiff's conduct directed at Family Dollar, Defendant would have contracted with Family Dollar. See Jabbour v. Albany Medical Center, 237 A.D.2d 787, 790 (1st Dept. 1997) ("Along with demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the proximate cause of the rejection of the plaintiff's proposed contractual relations."). Accordingly, Plaintiff's Motion to dismiss is granted.

### D. Leave to Replead

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., 949 F.2d at 48. "Of course, where a [party] is unable to allege any fact sufficient to support its claim, [the claim] should be dismissed with prejudice." Id.

As discussed above, the deficiencies with Defendant's counterclaim for punitive damages, and counterclaim for damages for breach of contract beyond retention of the deposit, are substantive in nature; thus, repleading would be futile. However, reading all inferences in favor of the Defendant, the Court does not find that Defendant could not allege any facts to support its counterclaim for tortious interference. Accordingly, the Court will grant Defendant leave to file an amended Answer, reasserting its counterclaim for tortious interference with prospective business relations. See, e.g., Emanian v. Rockefeller University, No. 07 Civ. 3919, 2008 WL 4443824, at *8

(S.D.N.Y. Sep. 25, 2008) (granting motion to dismiss claim for tortious interference with prospective economic advantage with leave to replead, where amendment would not be futile).  If Defendant wishes to serve and file an amended Answer, she must do so within twenty days from the date of this order.

### IV.   CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Motion to dismiss Defendant's Counterclaims (Dkt. No. 11) is **GRANTED**; Defendant's counterclaim for breach of contract is **DISMISSED with prejudice** to the extent Defendant seeks damages for breach of contract in excess of retention of the $69,500 deposit; Defendant's counterclaim for punitive damages is **DISMISSED with prejudice**; Defendant's counterclaim for tortious interference with a prospective contractual relationship is **DISMISSED without prejudice** to the filing of an amended Answer within **twenty (20) days** of the filing of this Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:    May  7, 2009
          Albany, New York

Lawrence E. Kahn
U.S. District Judge