UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CATSKILL ASSOCIATES, L.L.C.,

                Plaintiff,

    v.                                                  1:08-CV-0598 (LEK/RFT)

RITA K. BENZA, Individually and as
Executrix of the Estate of Augustine J.
Benza,

                Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Before the Court is a Motion to dismiss (Dkt. No. 24) Defendant's amended counterclaim alleging tortious interference on the part of Plaintiff (Dkt. No. 23). Plaintiff in this action is Catskill Associates, L.L.C. and Defendant is Rita K. Benza, who is sued individually and as executrix of the estate of Augustine J. Benza. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff asserts that the Defendant's counterclaim, amended after this Court dismissed without prejudice the initial submission of the tortious interference claim, remains defective and fails to state a claim for which relief may be granted. The Court has jurisdiction over the case, pursuant to 28 U.S.C. §1332(a)(1), on the basis of diversity of citizenship and a sufficient amount in controversy.

1

## II.     BACKGROUND

On February 15, 2008, Plaintiff and Defendant entered into a real property sale agreement which provided that Defendant would sell and Plaintiff would purchase commercial property located at 1179 Vestal Avenue in Binghamton, New York.  Compl. ¶ 8 and Ex. 1; Answer ¶ 7.  After the execution of the agreement, Plaintiff commissioned a survey of the property.  Compl. ¶ 12.  The survey revealed an encroachment of approximately one and a half feet arising from a structure located on the lands to the west of the property.  Id. ¶ 13 and Ex. 2.

On April 1, 2008, Plaintiff's counsel provided Defense counsel with notice of the encroachment.  Compl. ¶ 17 and Ex. 4.  On April 21, 2008, Defense counsel responded that this encroachment was *de minimus*, did not make title to the property unmarketable, and requested that the closing occur as soon as possible. Compl. ¶ 18 and Ex. 5; Answer ¶ 9.  On May 7, 2008, Plaintiff's counsel reasserted her belief that the encroachment rendered the property unmarketable and demanded the return of Plaintiff's deposit.  Compl. ¶ 19 and Ex. 6; Answer ¶ 10.  Defense counsel responded on May 23, 2008, asserting again that the encroachment was *de minimus* and that his client was unwilling to return the deposit.  Compl. ¶ 20 and Ex. 7; Answer ¶¶ 11, 13.  Defense counsel also offered that Defendant would negotiate a revocable license with the adjacent property owner to resolve any concerns Plaintiff had about the encroachment.  Compl. ¶ 20 and Ex. 7; Answer ¶ 13.

Defendant alleges that during the period from November 2007 through February 2008, she had specific negotiations with Family Dollar, Inc. ("Family Dollar") as a prospective tenant of the subject building and property located at 1179 Vestal Avenue.  Amended Answer ¶ 19.  Plaintiff is affiliated with a company that owns property immediately adjacent to the east of the property at

issue in this case, and that affiliated company operates a small shopping center on that adjacent property. Compl. ¶ 7. Defendant alleges that Family Dollar has been a tenant in that shopping center for many years and that the lease agreement between Family Dollar and Plaintiff's affiliated company was about to expire in June 2008. Amended Answer ¶ 21. Defendant further alleges that Family Dollar had begun negotiations with Defendant to lease the property located at 1179 Vestal Avenue, and that in response, "with the specific intent to terminate the defendant's agreement with Family Dollar Inc., [Plaintiff] fraudulently entered into the subject real estate purchase agreement with the defendant[.]" Amended Answer ¶¶ 26-30. Defendant alleges that "plaintiff's actions in misrepresenting their intentions to purchase said property from the defendant were fraudulent and were specifically pursued in order to keep Family Dollar Inc. as a tenant at the shopping center owned by the plaintiff's affiliated company." Id. ¶ 30.

On May 7, 2009, this Court dismissed with prejudice Defendant's counterclaim alleging breach of contract in excess of an agreed-upon deposit and dismissed her counterclaim for punitive damages. See Dkt. No. 21. The Court also dismissed Defendant's counterclaim for tortious interference without prejudice. Id. It was found that Defendant's Answer (Dkt. No. 8) failed to adequately plead the required elements to sustain a counterclaim for tortious interference with prospective business relations, in that it did not to allege acts by Plaintiff directed at Family Dollar that would constitute malicious or unfair conduct amounting to a crime or independent tort. Additionally, the Answer did not allege that but for Plaintiff's conduct directed at Family Dollar, Defendant would have contracted with Family Dollar. Because "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," the Court allowed the Plaintiff 20 days to file an amended Answer. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

The Motion presently under consideration seeks to dismiss the counterclaim as it has been repled in Defendant's amended filing made on May 27, 2009, as Plaintiff argues that Defendant has not and cannot remedy the defects in her claim.

### III.    STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party in its pleading as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Securities Litig., 503 F.3d 89, 95 (2d Cir. 2007). A party seeking dismissal of a pleading under Rule 12(b)(6) bears a heavy burden, as the question presented by such a motion is not whether the claimant is ultimately likely to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d. Cir. 1995) (internal quotation and citations omitted)). Accordingly, counterclaims should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the defendant has failed to provide some basis for the allegations that support the elements of her claim. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-563, 570 (2007); see also Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) ( "In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face'") (quoting Twombly, 550 U.S. at 570). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the non-moving party's] claims across the line from conceivable to plausible.'" In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570). When considering a motion to dismiss a pleading for

4

failure to state a claim, a court "may consider all papers and exhibits appended to the [pleading], as well as any matters of which judicial notice may be taken." Hirsch v. Arthur Andersen and Co., 72 F.3d 1085, 1092 (2d Cir. 1995); see Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss[.]" Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Industries, 949 F.2d at 47); see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasizing that "a plaintiff's *reliance* on the terms and effect of a[n external] document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). If a court considers materials other than those listed above, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 154-56 (2d Cir. 2006).

**IV.    DISCUSSION**

Under New York law, a claim for tortious interference with prospective economic relations requires a plaintiff to prove that "1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused

5

injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)). "[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." Carvel Corp. v. Noonan, 3 N.Y.3d 182, 192 (2004) (citations omitted). Where the alleged wrongdoer interfered with prospective business relations (as opposed to interfering with an existing contractual relationship), the conduct must generally amount to a crime or independent tort to be actionable. Id. at 190. Such "wrongful means" are comprised of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference" with the prospective economic relationship. NBT Bancorp v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 624 (1996) (citing Guard-Life Corp c. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980). As the Second Circuit has explained, the tort applies to a limited category of circumstances:

> The idea behind the tort is that A claims that C interfered with A's prospective economic relationship with B. Often, C is a market competitor of A, and thus C's actions are aimed at luring B away from A, so that C, itself, can enter into an economic relationship with B. But sometimes C is simply an interloper in the affairs of A and B, acting with the primary purpose of injuring A. Thus, the central tension in such cases is in drawing the line between permissible market behavior and impermissible predatory behavior.

Carvel Corp. v. Noonan, 350 F.3d at 18. For her counterclaim to survive Plaintiff's Motion, Defendant must adequately allege that Plaintiff engaged in conduct which amounts to a crime or independent tort, that such conduct was directed at Family Dollar, that the conduct was undertaken with the purpose of injuring the Defendant, and that the wrongful conduct was the proximate cause of Defendant's injury.

The Court finds that Defendant's Amended Answer remains deficient in critical respects, failing to adequately allege at least two elements of a claim for tortious interference with a prospective economic relation.  Specifically, Defendant's counterclaim does not allege that Plaintiff committed a wrongful action directed at Family Dollar and does not allege that Plaintiff's action was the but for cause of Defendant's claimed injury.  Even accepting the factual allegations made by Defendant as true (but not those statements which are purely conclusory) and drawing all inferences in the light most favorable to Defendant, the Amended Answer quite simply does not state "enough facts to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.  The problem is not one of a scarcity of alleged facts, but of alleged facts which necessarily preclude Defendant's tortious interference claim. That is, Defendant's asserted facts cannot plausibly support a successful claim of this type against Plaintiff.

*a. Wrongful Conduct Against a Third Party*

The conduct on which Defendant bases her claim is the allegation that Plaintiff misrepresented to Family Dollar that it had purchased or signed a purchase agreement with the Defendant, such that Family Dollar would no longer be able to lease Defendant's property. Intentional misrepresentation directed at a third party may indeed form the basis of a tortious interference claim.  NBT Bancorp, 87 N.Y.2d at 624.  Yet, while Defendant's Answer makes numerous assertions of dishonesty, misrepresentation and fraudulent statements on the part of Plaintiff towards Family Dollar, these conclusory characterizations of Plaintiff's dealings are not factual allegations and contradict the actual factual allegations contained in the Answer.  Defendant states that "[a]s alleged in the plaintiff's complaint the plaintiff and defendant executed a real

7

property sale agreement dated February 15, 2008 which provided that the defendant would sell and the buyer would purchase the parcel of commercial property located at 1179 Vestal Avenue." Amended Answer ¶ 7. Thus Defendant concedes that the parties did sign a purchase agreement.

Defendant alleges that she "specifically negotiated paragraph 4 of the subject contract [with Plaintiff] to include a non-refundable deposit whereby the defendant, in reliance upon this non-refundable deposit, discontinued all lease negotiations" with Family Dollar. Amended Answer ¶ 24. Defendant thereby expressly admits that she voluntarily enter into an agreement with Plaintiff and ceased late-stage negotiations with the third-party in this case. At no point in Defendant's filings is the conspicuous disconnect between her admission of the existence of this contract for the sale of property and her accusations of misrepresentation ever reconciled. Rather, she alleges that Plaintiff "fraudulently entered into the subject real estate purchase agreement with the defendant in order to cause the defendant to not execute the lease with Family Dollar Inc. and to thereby fraudulently encourage Family Dollar Inc. to renew its lease with the plaintiff's affiliated company." Id. ¶ 26. This allegation can only be viewed as completely irrelevant to Defendant's counterclaim for the simple reason that, whatever Plaintiff's motives may be in relation to Family Dollar, the conduct was directed at the Defendants and, setting aside the repeated conclusory accusations of fraud, was plainly not wrongful. Since Plaintiff's advising Family Dollar that it had contracted to purchase Defendant's property is the only conduct alleged to be directed against the third party, and such an action cannot plausibly be considered wrongful, there is no factual basis on which to rest Defendant's claim of tortious interference. Accordingly, because Defendant does not allege facts that Plaintiff made misrepresentations directed at Family Dollar, but instead alleges facts that Plaintiff showing precisely the opposite, Defendant fails to state an essential element of her

counterclaim. See I.S. Sahini, Inc. v. Scirocco Financial Group, Inc., No. 04-cv-9251, 2005 U.S. Dist. LEXIS 21876 at *18 (S.D.N.Y. Sept. 28, 2005) (dismissing tortious interference claim where conduct directed at third party was "based upon truthful information").

*b. But For Causation*

Similarly, Defendant has alleged facts and submitted evidence that shows Plaintiff was not the but for cause of her asserted injury. In her Amended Answer, Defendant states that the "fraudulent and wrongful acts of the plaintiff directed toward Family Dollar Inc. were the proximate cause of Family Dollar Inc. terminating their lease negotiations with the defendant." Amended Answer ¶ 45. Thus Defendant contends that Plaintiff's purported misrepresentation of purchasing Defendant's property was the immediate trigger of the cessation of lease negotiations. However, in the Amended Answer, as quoted above, Defendant states that she negotiated paragraph 4 of the subject contract to include a non-refundable deposit whereby the Defendant, in reliance upon this non-refundable deposit, discontinued all lease negotiations. Hence, Defendant alleges that *she agreed* to cease her lease discussions with Family Dollar at the time she entered a contract for the sale of her property to Plaintiff, which included obtaining a non-refundable deposit of $69,500 from Plaintiff.

Further, in Exhibit C of her Amended Answer, Defendant submits an affidavit from Domenic A. Mazza, a real estate broker who worker for Family Dollar on negotiating a lease with Defendant of the property at 1197 Vestal Avenue; he avers that "Family Dollar advised me to contact the [Defendant] to verify that the property was under contract and if so to cease any further negotiations . . . ." Amended Answer, Ex. C ¶ 13. Regardless of which party, Family Dollar or

Defendant, may be said to have terminated negotiations, it is clear that Defendant's own actions in conjunction with those of Family Dollar, rather than any "misrepresentation" by Plaintiff, caused that termination: Defendant contracted to sell the property; Plaintiff informed Family Dollar that the property was no longer available; Family Dollar, through its real estate agent, contacted and confirmed with Defendant that the property was under contract; and lease negotiations were then terminated, by one or both parties. Plaintiff's advice to Family Dollar is only a middle step between Defendant's actual agreement to sell the property and the later communication between Family Dollar and Defendant which resulted in the termination of negotiations. Accordingly, because Defendant alleges facts and submits evidence showing that Plaintiff's "misrepresentation" was not the but for cause of her pled injury, she fails to make out an essential element of her claim.

The Court finds that the facts alleged by Defendant contradict and preclude her tortious interference claim. In short, the Amended Answer makes clear that there was no misrepresentation directed at Family Dollar; moreover, that Plaintiff informed Family Dollar of the sale of the property was not the but for cause of the termination of lease negotiations between Family Dollar and Defendant. Therefore, Defendant's claim must fail as a matter of law, and the Court grants Plaintiff's Motion to dismiss the counterclaim with prejudice pursuant to Rule 12(b)(6). "One appropriate basis for denying leave to amend is that the proposed amendment is futile . . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule 12(b)(6)]." Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002) (citations omitted).

### V. CONCLUSION

Accordingly, based on the foregoing, it is hereby

**ORDERED**, that Plaintiff's Motion to dismiss (Dkt. No. 24) is **GRANTED**, and it is further

**ORDERED**, that Defendant's tortious interference counterclaim (Dkt. No. 23) is **DISMISSED with prejudice**, consistent with this Decision and Order, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:   March 16, 2010
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge